UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:23-cv-00255

| | |
|---|---|
| HOPE D. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | COMPLAINT and DEMAND FOR TRIAL BY JURY |
| BOJANGLES OPCO, LLC, and ) | |
| BOJANGLES' RESTAURANTS INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INTRODUCTION

This action seeks to redress wrongs caused by Bojangles OpCo, LLC and Bojangles' Restaurants Inc. (collectively "Defendants"), when they discriminated against Plaintiff Hope D. Johnson ("Johnson" or "Plaintiff") by terminating her employment because of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as amended; 42 U.S.C. § 1981 of the Civil Rights Act of 1866 ("Section 1981"); and North Carolina public policy as set forth in North Carolina's Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.1. This action also seeks to redress wrongs caused by Defendants when they interfered with Plaintiff's rights as protected by the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*

1

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 over the subject matter of the claims brought for unlawful discrimination under Title VII and Section 1981 and unlawful interference under the FMLA.

2. The claim for wrongful discharge in violation of North Carolina public policy is based on the common law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same common nucleus of operative facts as the Title VII and Section 1981.

3. This Court has personal jurisdiction because Defendants conduct substantial business in Guilford County, North Carolina, which is located within this judicial district.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants has substantial business contacts in this district and because the unlawful acts or omissions alleged herein occurred in Guilford County, North Carolina, which is located within this judicial district.

## PARTIES

5. Johnson is an adult individual who is a resident of High Point, North Carolina.

6. Defendant Bojangles OpCo, Inc. is a foreign corporation registered and in good standing in the State of North Carolina, with its principal office located at 9432 Southern Pine Blvd, Charlotte, North Carolina 28273.

7. Defendant Bojangles Restaurant Inc. is a foreign corporation registered and in good standing in the State of North Carolina, with its principal office located at 9432 Southern Pine Blvd, Charlotte, North Carolina 28273.

## COVERAGE ALLEGATIONS

8. At all relevant times, Johnson was an "employee" covered by the protections of Title VII within the meaning of 42 U.S.C. § 2000e(f).

9. At all relevant times, Defendants employed at least fifteen (15) employees.

10. Johnson satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination with the United State Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race. Plaintiff received her Notice of Right to Sue from the EEOC on December 21, 2022 and timely brings this lawsuit within ninety (90) days of her receipt thereof.

11. At all relevant times, Defendants have been "employers" within the meaning of the FMLA, in that Defendants are engaged in commerce or an industry affecting commerce and employ fifty (50) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, 29 U.S.C. § 2611(4).

12. At all relevant times, Plaintiff was an "eligible employee" within the meaning of the FMLA, in that Defendant employer her for at least 12 months, and she performed at least 1,250 hours of service with Defendant during the 12-month period preceding the termination of her employment, 29 U.S.C. § 2611(2).

3

## PLAINTIFF'S FACTUAL ALLEGATIONS

13. Defendants own and operate an American regional chain of fast-food restaurants that specialize in Cajun-seasoned fried chicken and buttermilk biscuits and primary served the Southeastern United States.

14. Johnson began her employment with Defendants on or about April 27, 2017 and held the Assistant Manager role. On or about April 30, 2018, Johnson voluntarily stepped down to the position of Shift Supervisor and worked part-time. Johnson worked in this role until she was terminated on February 25, 2021.

15. Johnson is an African American female who regularly met or exceeded Defendants' legitimate employment expectations as demonstrated by a lack of disciplinary action during her employment.

16. Due to the COVID-19 pandemic, Defendants implemented a screening questionnaire that each employee had to complete before starting their work shift. If an employee failed to complete the questionnaire before their shift, Defendants prohibited the employee from being able to "clock-in" for their shift.

17. Defendants' questionnaire included questions such as:

- Have you been in contact with anyone who is or was experiencing symptoms of COVID-19 in the last 14 days?

- Are you experiencing or have you experienced any of the following symptoms in the last 48 hours: fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of

taste or smell, sore throat, congestion or runny nose, nausea or vomiting, diarrhea?

- Have you tested positive for COVID-19 in the past 10 days?
- Are you currently awaiting results from a COVID-19 test?

18. If an employee answered "yes" to any of the questions, the questionnaire automatically transferred the employee to a screen instructing the employee to alert their supervisor that the employee had to go home.

19. In addition to requiring each employee to complete the questionnaire, Defendants required each employee to pass a temperature check before their assigned shift. If the employee failed the temperature check, Defendants prohibited the employee from working their assigned shift.

20. On or about February 18, 2021, Johnson arrived for her regularly scheduled work shift. Johnson completed the questionnaire, responding "no" to all questions. Johnson additionally passed the temperature check.

21. On or about February 19, 2021, Johnson arrived for her regularly scheduled work shift. Johnson felt different than normal but was not experiencing any symptoms associated with COVID-19. Johnson began a new medication for her chronic back pain and associated feeling differently because of the new medication. Johnson completed the questionnaire, responding "no" to all questions and additionally passed the temperature check.

22. On or about February 20, 2021, Johnson arrived for her regularly scheduled work shift. Johnson again felt different than normal but was not experiencing any

5

symptoms associated with COVID-19. Johnson attributed feeling different than normal due to taking a muscle relaxer the night before for her chronic back pain. Johnson completed the questionnaire, responding "no" to all questions and additionally passed the temperature check. That same day, Johnson began experiencing stomach issues. Johnson told Diana Garcia ("Garcia"), Defendant's Assistant Manager that her stomach felt upset. Garcia informed Erica (last name unknown), Defendant's General Manger, who gave Johnson permission to go home to take some medicine so that she could clean the grill later that day. However, Johnson felt better after drinking some orange juice and did not take any medicine that day.

23. On February 21, 2021, before Johnson arrived for her regularly scheduled work shift, she felt a slight amount of congestion that was not normal for her. While at home, Johnson filled out the screening questionnaire and responded "yes" to the question asking if she was experiencing any symptoms. Johnson then telephoned her supervisor. Johnson's supervisor required her to go to the doctor, which she did. While at the doctor's office, Johnson's doctor performed a "rapid test" and the results indicated that Johnson tested positive for COVID-19. Johnson's doctor prescribed her an Albuterol inhaler, Dexamethasone, and Doxycycline, and provided her a note excusing her from work for ten days.

24. On February 21, 2021, Johnson informed Erica that she tested positive for COVID-19. Erica asked Johnson to send her a copy of her doctor's note and test results, which Johnson did. Erica informed Amanda McLellan ("McLellan"), Defendant's Area Director that Johnson had tested positive for COVID-19. Defendants mandated Johnson

take leave under their Employee Health Policy, which adopted the Center for Disease Control's ("CDC") recommended quarantine period of at least ten days of leave.

25. On February 23, 2021, McClellan telephoned Johnson and asked if Johnson told anyone she was not feeling well. Johnson responded that she told her supervisor she tested positive and had a doctor's note excusing her from work for ten days. Johnson also told McClellan that she had told Diana Garcia that her stomach had been acting up.

26. Later that same day, Johnson learned that Erica, instructed Diana Garcia to "lie about [Johnson] reporting her illness" if Garcia "wanted to keep [her] job."

27. On or about February 25, 2021, McLellan telephoned Johnson to inform her that Defendant was terminating her employment. McLellan informed Johnson the stated reason for termination was due to "falsifying documents."

28. McLellan has a personal animus for Johnson and other minority employees working for Defendant.

29. In 2018, Johnson filed an EEOC charge alleging racial discrimination by McLellan.

30. On or about October 24, 2020, McLellan, who is a Caucasian female, terminated the employment of another African American female, Ivy Davis, for not wearing her mask properly. However, on multiple occasions McLellan visited Johnson's location and was either not wearing a mask at all or was not wearing the mask properly. McLellan did not reprimand any similarly situated Caucasian employees for wearing their masks improperly.

7

31. Upon information and belief, McLellan terminated Garcia's employment on or about March 4, 2021 after Garcia made multiple hostile work environment complaints against Debby Caudill ("Caudill") (Caucasian Female), Assistant Manager at Johnson's location. Caudill called Garcia a "bitch" in front of multiple employees and made other threatening remarks to Garcia. McLellan did not reprimand Caudill.

32. McLellan also displayed preferential treatment to other Caucasian employees. The former GM of Johnson's location, Chelsea Ross ("Ross"), was a friend of McLellan. Ross engaged in poor job performance and promised every employee a raise but then failed to give any employee a raise. McLellan transferred Ross to a different location to work closer to McLellan.

33. McLellan terminated Johnson's employment because of her race and the stated reason for termination—"falsifying documents"—is clearly pretext for unlawful discrimination.

34. Defendants' actions constitute an intentional, willful, and reckless disregard for Johnson's rights as protected by Title VII and Section 1981.

35. Defendants failed to provide Johnson eligibility notice of her FMLA rights.

36. Defendants failed to provide Johnson with FMLA rights and responsibilities notice before terminating her employment.

37. Defendants knew or showed reckless disregard to Johnson's rights as protected by the FMLA because they required Johnson to seek medical treatment with a healthcare provider to test for COVID-19, mandated she take leave in accordance with their

Employee Health Policy, and knew or should have known that the mandatory leave under their policy might result in FMLA-qualified leave.

38. Johnson has suffered, and continues to suffer, damages as a result of Defendants' unlawful actions.

## COUNT I:
### (Violation of Title VII—Discrimination based on race)

39. Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

40. Defendants' actions as described in detail in the factual allegations above subjected Plaintiff to unlawful discrimination on the basis of her race.

41. Defendants discriminated against Plaintiff by terminating her employment because of McLellan's racial animus toward Plaintiff.

42. Defendants' actions were intentional, willful, and/or undertaken in reckless disregard of Plaintiff's rights as protected by Title VII.

43. Plaintiff has suffered, and continues to suffer, damages as a direct and proximate result of Defendants' unlawful actions.

## COUNT II:
### (Violation of Section 1981—Discrimination based on race)

44. Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

45. Defendants unlawfully discriminated against Plaintiff by terminating her employment because of her race, African American, in violation of Section 1981.

46. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violating Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages including but not limited to, loss of past and future income, compensation, and benefits, entitling Plaintiff to an award of monetary damages and other relief.

47. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT III:
**(Wrongful Discharge in Violation of Public Policy on the Basis of Race)**

48. Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

49. The public policy of the State of North Carolina as set forth in NCEEPA, N.C. Gen. Stat. § 143-422.1, prohibits employers from discriminating against employee on the basis of their race. Plaintiff is African American and therefore, a member of a protected class. This is specifically established in N.C. Gen. Stat. § 143-422.2.

50. Defendants violated the public policy of North Carolina as set forth in NCEEPA by terminating Plaintiff, a member of a protected class, on the basis of her race.

51. As a proximate and foreseeable result of Defendants' conduct, Plaintiff has suffered lost back wages and fringe benefits, expenses, and other damages, which Plaintiff seeks from Defendants.

10

Case 1:23-cv-00255-WO-JLW   Document 1   Filed 03/21/23   Page 10 of 13

52. Defendants' actions were done maliciously, willfully, or wantonly or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages.

## COUNT IV:
### (Violations of FMLA—Interference)

53. Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

54. Defendants unlawfully interfered with Plaintiff's rights under the FMLA by failing to provide Plaintiff with eligibility notice, which would have informed Plaintiff she was eligible for FMLA protected leave.

55. Defendants unlawfully interfered with Plaintiff's rights under the FMLA by failing to provide Plaintiff with rights and responsibilities notice relating to protected FMLA leave and terminating her employment.

56. Defendants' failure to provide Plaintiff with the requisite notice under the FMLA prejudiced her in that Defendant terminated her employment after it learned of Plaintiff's serious health condition that made her eligible for protected FMLA leave.

57. Defendants knew or showed reckless disregard to Plaintiff's rights as protected by the FMLA because they required Plaintiff to seek medical treatment with a healthcare provider to test for COVID-19, mandated she take leave in accordance with their Employee Health Policy, and knew or should have known that the mandatory leave under their policy might result in FMLA-qualified leave.

58. Johnson has suffered, and continues to suffer, damages as a result of Defendants' interference with Plaintiff's FMLA rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request the following relief:

a) Order Defendants to pay Plaintiff all lost wages, lost fringe benefits, compensation, and monetary loss suffered from the time of her termination until final judgment in this matter;

b) Order Defendants to reinstate Plaintiff to her former position or to a comparable position with full seniority, benefits, and wages, or award front pay and benefits in lieu of reinstatement;

c) Order Defendants to pay compensatory damages to Plaintiff;

d) Order Defendants to pay punitive damages to Plaintiff;

e) Order Defendants to pay liquidated damages to Plaintiff;

f) An Order and Declaration finding that Defendants willfully violated Title VII, Section 1981, and the FMLA.

g) Order Defendants to pay reasonable attorneys' fees, litigations expenses, and costs incurred as a result of bringing this action;

h) Order Defendants to pay Plaintiff pre- and post-judgment interest at the highest rates allowed by law; and

i) An Order granting such other and further relief as may be necessary and appropriate.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury for all issues of fact.

Dated: March 21, 2023

                                            Respectfully Submitted,

                                            s/ Corey M. Stanton
                                            Philip J. Gibbons, Jr., NCSB #50276
                                            Corey M. Stanton, NCSB #56255
                                            **GIBBONS LAW GROUP, PLLC**
                                            14045 Ballantyne Corporate Place, Suite 325
                                            Charlotte, NC 28277
                                            Telephone: 704-612-0038
                                            Email: phil@gibbonslg.com
                                                          corey@gibbonslg.com

                                            *Attorneys for Plaintiffs*